LUIS CASTRO FELIÚ, Plaintiff and Appellee, *v.* REXACH RACING & SPORTING CORPORATION, Defendant and Appellant.

No. 8485. Argued April 7, 1942.—Decided April 23, 1942.

*Luis Sánchez Vahamonde* and *H. Torres Solá* for appellant. *Leopoldo Feliú* por appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

On October 18, 1937, the defendant corporation appointed the plaintiff, Luis Castro Feliú, manager of the "Las Casas" race track for a term of five years, and it bound itself to pay to him for his services "thirty per cent of the net profits received by the corporation from the horse races held

on the 'Las Casas' race track." Under the terms of the written contract which was entered into by said parties the compensation of the manager must be computed in accordance with the following table:

Up to $12,000 net profits_____ 30 per cent
From $12,000 to $20,000 that is on $8,000_____ 25 per cent
On all profits exceeding $20,000_____ 10 per cent

In paragraph 4 of the contract it was stipulated that "the net profits of the corporation shall be understood to mean those obtained as a result of the horse races held on the 'Las Casas' race track," after deducting the amount of prizes paid to the owner of horses, taxes, insurance premiums, expenses for maintenance of the property, printing and advertisements in connection with the races, and especially:

"(e) All expenses known in race tracks as 'race expenses,' such as salaries of the personnel connected with the pool, subscription fund, ticket offices, grooms, . . . ."

Paragraph 8 of the contract reads as follows:

"8. The proceeds of the sale of the tickets (cuadros) for betting on the pool shall not be considered as an income of the corporation, but everything pertaining to said tickets shall hereafter be decided by the corporation."

On April 18, 1940, Castro filed a complaint in which, after stating the terms and conditions of his contract with the defendant, alleged that he had served as manager of the "Las Casas" race track and discharged all the duties of his office until June 30, 1938, when both parties terminated the contract subject to the making of a liquidation of the net profits received and payment to the plaintiff of any sum due him under the contract; that according to his information and belief the net profits received by the defendant amounted to $25,341.31, out of which the sum of $3,984.13 belonged to him in accordance with the contract; and that

the defendant had refused to make the liquidation of profits and to pay to the plaintiff the sum due him. The plaintiff prayed that the defendant be directed to forthwith make, with the intervention of the court and of the plaintiffs, "a complete, faithful, and correct liquidation of the net profits received by it from the horse races, pools, bancas, and subscription funds held on the 'Las Casas' race track from October 18, 1937, to June 30, 1938"; and that, after said sum had been determined, the defendant be adjudged to pay to the plaintiff his share in such profits, with interest thereon, costs, and attorney's fees.

The defendant answered, specifically denying each and every essential averment of the complaint.

On December 30, 1940, the District Court of San Juan rendered judgment sustaining the complaint and ordering—

". . . . That the defendant Rexach Racing & Sporting Corporation forthwith make, at its own expense, with the intervention of this court and of the plaintiff, a liquidation of the net profits received by it from the races on the 'Las Casas' racetrack from October 18, 1937, to June 30, 1938, so as to ascertain the share in such profits to which the plaintiff may be entitled under the contract made with him; and once said profits have been ascertained and determined, they should be paid to the plaintiff Luis Castro Feliú the share in said net profits to which he may be entitled with interest thereon at the rate of 6 per cent per annum from April 18, 1940. The defendant is adjudged to pay the costs."

On January 3, 1941, the plaintiff moved to reconsider and amend the judgment in the sense of providing (a) that the liquidation ordered should include all profits received by the defendant from horse races, pools, bancas, and subscription funds held on the "Las Casas" race track; (b) that the defendant should pay interest on the amount of the share pertaining to the plaintiff from the date of the termination of the contract, that is, from June 30, 1938; and (c) that the defendant should pay to the plaintiff his attorney's fees. Said motion for reconsideration was denied in all its parts.

The court in its decision stated that the allowance of attorney's fees would not be proper, as there was no obstinacy on the part of the defendant, and that an award of interest sum which had not yet been liquidated. The court failed to sum which had not been yet liquidated. The court failed to state any reason for its refusal to grant the request contained in the motion to have the judgment rendered more specific as to the items which should be covered by the liquidation.

On January 30, 1941, the defendant filed a motion consenting to the judgment rendered on December 30, 1940, and exhibited there with ''a liquidation of all the receipts and expenses on account of the horse races and derived from the items 'ticket booths, pool, and banca.' '' According to said liquidation, the defendant gross receipts from October 16, 1937, to June 30, 1938, amounted to $102,067.22, showing a net profit of $5,162.77.

The plaintiff opposed the approval of the statement of liquidation submitted by the defendant, on the ground that the same failed to include the income received by the defendant from subscription funds, pool-tickets, lease of refreshment booths, sale of programs and radio broadcasts of horse races and games; and alleged that the total income actually received by the defendant exceeded $126,000.

In answer to plaintiff's opposition the defendant alleged that the inclusion of the profits derived from the subscription funds was a matter which had already been decided by the lower court when denying the reconsideration of its judgment, and that therefore the doctrine of *res judicata* was applicable thereto.

On May 27, 1941, the lower court rendered its decision which reads as follows:

''This court, by its judgment sustaining the complaint, ordered the defendant to make a liquidation of the net profits received by it from the horse races held on the 'Las Casas' race track from

October 18, 1937, to June 30, 1938, so as to fix plaintiff's share in such profits in accordance with the contract entered into by him.

"After the judgment had become final (*firme*), the defendant simply filed an incomplete statement of the receipts and expenditures which only included the receipts from the pools, bancas, and ticket offices during the period referred to in the judgment, and failed to include the receipts from other sources such as subscription funds, lease of refreshment booths, and radio fees collected by the defendant during the period in question.

"*It is stipulated in the contract* that the defendant shall pay to the plaintiff a percentage of the net profits received by the corporation *from the races held on defendant's race track,* and that the net profits of the corporation shall be understood to mean those received as a result of the horse races held, after deducting, among others, all expenses known in race tracks as 'race expenses' such as salaries of the personnel engaged in operating the pool, the subscription fund, etc.; which shows that it is on race days that the subscription fund lots are drawn and that the plaintiff is entitled to share in any profits accruing to the corporation on that account, for without the holding of the races no lots may be drawn in connection with the subscription fund.

"The defendant is hereby ordered to file a statement within 10 days, and to serve the plaintiff with a copy thereof, of all its receipts and expenditures for the days when races were held on the 'Las Casas' race track during the period from October 18, 1937, to June 30, 1938, all this pursuant to the judgment rendered in this case.

It is from the above-quoted order that the defendant Rexach Racing & Sporting Corporation has taken the present appeal, and it urges that the same is contrary to law and prejudicially affects the legal and factual situation created by the judgment rendered by the same court on December 30, 1940, which is now final (*firme*) as no appeal has been taken therefrom by either party.

The question to be decided is whether the refusal of the lower court to reconsider its judgment precluded the plaintiff from opposing the approval of the liquidation statement on the ground that the same failed to include the profits derived from the subscription fund. That question, we think, should be answered in the negative.

■■ The judgment rendered on December 30, 1940, was entirely favorable to the plaintiff, and, as we have seen, it directed the defendant to make a liquidation "of the net profits received by it from the horse races held . . ." It was, therefore, natural that the plaintiff should take no appeal from a judgment rendered in his favor and in accordance with the prayer in his complaint. Nor could the plaintiff appeal from the order denying the reconsideration sought, as the same was not appealable.

■■ We can not accept as indisputable appellant's argument to the effect that the refusal of the trial court to render the judgment more specific by enumerating the items which should be included in the liquidation was tantamount to an adverse determination of plaintiff's alleged right to share in the profit derived from the subscription fund. We are rather inclined to agree with the plaintiff—in the absence of an express declaration by the trial court—that the lower court denied the reconsideration because it considered that its judgment was sufficiently clear and specific to inform the interested parties of its scope. When the question arose between the parties as to whether or not the liquidation should include the benefits derived from the subscription fund, the trial court, in interpreting the scope and meaning of its own judgment settled the same by holding that they should be included.

We are of opinion that the trial court correctly construed the contract made by the parties. According to its terms, the plaintiff is entitled to share in the net profits received by the defendant "from the horse races held on the 'Las Casas' race track" and the net profits mean "the profits received as a result of the horse races held."

If any doubt existed as to whether the profits derived from the subscription fund are profits received "as a result of the horse races held," such doubt should be dispelled in the sense that they are, when it is considered that it is ex-

pressly provided in the contract that in order to' determine the net profits there should be deducted from the gross receipts, among others, "all expenses known in race tracks as RACE EXPENSES, such as salaries of the personnel connected with the pool, subscription fund, ticket offices, grooms, etc." It seems just and logical to hold that if the subscription fund expenses and race expenses are, as such, deductible from the gross receipts, the net profits from that same subscription fund should be considered as an integral part of the net profits received by the corporation as a result of the horse races held, in which profits the plaintiff is entitled to share. Moreover, it would be hard to conceive that the plaintiff should bind himself to manage defendant's subscription fund and to contribute to the expenses thereof while renouncing to any share in the net profits derived from said game. If the contracting parties had intended to exclude the profits received from the subscription fund, they could have easily excluded the same just as they did in the case of the proceeds of the sale of tickets for betting on the pool, which notwithstanding their being a part of the receipts from the horse races were expressly excluded from the income to be liquidated by virtue of clause 8 of the contract, *supra.*

We are of opinion that the doctrine of *res judicata* invoked by the appellant has no application to the facts and circumstances of the present case. Although the judgment of December 30, 1940, put an end to the controversy when it held that the plaintiff was entitled to recover any sums that might be due him under the terms of the contract, and it became final (*firme*) upon the failure of either party to appeal therefrom, it could not be executed before the making of the necessary liquidation for ascertaining the amount of plaintiff's share in the profits. The trial court retained full jurisdiction over the parties and over the cause of ac-

tion and had power to make any order tending to interpret the terms and scope of its own judgment.

The order appealed from must be affirmed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.